[No. 7174-6-II. Division Two. November 20, 1985.]

THE STATE OF WASHINGTON, *Appellant,* v. JO ELLEN MARIE WILLIAMSON, ET AL, *Respondents.*

*Henry R. Dunn, Prosecuting Attorney,* and *Bert Paul, Deputy,* for appellant.

*Clifford R. Kuhn,* for respondents.

REED, A.C.J.—The State appeals from an order suppressing evidence and thereby terminating prosecutions under the Uniform Controlled Substances Act and the imitation controlled substance statute. The issues before us arise from the following situation, described in the abstract. An occupant voluntarily invites a person unknown to him to enter the residence, and the latter neither presents himself under a false identity nor states any business that he intends to conduct if invited inside. The visitor, however, is an undercover police officer who intends to arrest, without a warrant, another occupant of the residence. Does such an entry violate either the Washington knock and announce statute (RCW 10.31.040) or the Fourth Amendment? We answer in the negative and reverse the suppression order.

During the spring of 1983 the Cowlitz County Sheriff was conducting an undercover drug investigation. During the course of the investigation Deputy Sheriff Steven Brewer secured evidence implicating defendant Jo Ellen Williamson as a supplier of LSD, with a connection to a manufacturing laboratory.

On April 1, Brewer and a sheriff's detective, both working in plain clothes, went to Williamson's residence. They later testified that, although they intended to arrest her on some charge, they obtained no warrant because they intended to seek her cooperation in revealing the source of her LSD supply. However, she was not at home. The undercover officers spoke with her friend, defendant Daniel Lickar,[1] but left without identifying themselves or stating their business.

On April 7 further evidence incriminating Williamson was obtained, and Brewer and his colleague, still under cover, returned to Williamson's residence. Again they had no warrant. The officers approached the screen door behind which a kitchen door was open and beyond which Williamson and Lickar were seated at a table. Although there was conflicting testimony concerning the events that followed, the trial court resolved the conflict in favor of the officers' testimony. According to the trial court's findings, the officers knocked on the screen door, Lickar invited and waved them in, they entered, they asked Williamson if she was Jo Ellen, she told them that she was and they arrested her.

At some point after Williamson's arrest, she may have been asked to sign a consent to search form.[2] In any event, the officers searched the home and seized the contraband that is the basis for the criminal charges lodged against defendants. Defendants moved to suppress the evidence seized in the search of Williamson's house on the grounds, among others, of violation of both the knock and announce

---

[1]Defendant Lickar's status as either guest or co-resident is not clear. In their suppression hearing brief defendants repeatedly refer to "defendants' residence." We presume, therefore, that Lickar shared the home with Williamson. No issue was raised as to his authority to invite the officers into the home.

[2]During oral argument we were informed that an issue remains regarding the validity of Williamson's consent to a search of the house. The trial judge did not reach the issue because of his determination that the original entry was unlawful, thus tainting any evidence found within. Thus, regrettably, resolution of the issue on remand may generate another appeal. Clearly, the preferred procedure would have been to obtain a ruling on this issue as a hedge against reversal by this court.

statute (RCW 10.31.040) and the Fourth Amendment. Finding that the officers gained entry by "ruse or subterfuge," the trial judge concluded that the warrantless entry was both illegal under the knock and announce statute and unconstitutional under the rule of *Payton v. New York,* 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980), and suppressed the evidence. The court found that the effect of its order was to terminate the prosecution's case, and the State appeals pursuant to RAP 2.2(b)(2).

## I
### THE KNOCK AND ANNOUNCE STATUTE

When entrance has been obtained peaceably upon request by a stranger who then reveals himself to be a police officer, this court has found that full consent to entry has been given, no "breaking" or "entry without valid permission" has taken place in violation of RCW 10.31.040, and any "right to privacy" effectively has been waived. *State v. Hartnell,* 15 Wn. App. 410, 417–18, 550 P.2d 63, *review denied,* 87 Wn.2d 1010 (1976). The facts here are different in no essential, and this principle is therefore controlling.

Even where entry is gained by ruse, subterfuge, or deception, no "breaking" occurs within the terms of a knock and announce statute.[3] *Leahy v. United States,* 272 F.2d 487, 489 (9th Cir. 1959), *cert. dismissed,* 364 U.S. 945, 5 L. Ed. 2d 459, 81 S. Ct. 465 (1961); *State v. Ellis,* 21 Wn. App. 123, 124–25, 584 P.2d 428 (1978). Such an entry is therefore not a violation of the knock and announce statute. It is approved because the interests underlying that statute are as well served by an entry gained with the permission of the occupant—even if the occupant does not know the official identity and purpose of the person seeking entry—as by an entry gained with the knowledgeable permission of the occupant. The privacy interest of the resi-

---

[3]The entry here was not obtained by a true "ruse," as that term is used in the decisions. The term "ruse" connotes the use of subterfuge or active misrepresentation. An officer's mere adoption of civilian attire is not a ruse.

dent is only one of the interests protected; others are the avoidance of violence and the avoidance of property damage. *State v. Coyle,* 95 Wn.2d 1, 5, 621 P.2d 1256 (1980); *see also State v. Huckaby,* 15 Wn. App. 280, 289–90, 549 P.2d 35, *review denied,* 87 Wn.2d 1006 (1976); *accord, State v. Myers,* 102 Wn.2d 548, 555, 689 P.2d 38 (1984).

The trial court erred in characterizing the entry into Williamson's home as a violation of RCW 10.31.040.

## II
### WARRANTLESS ENTRY TO ARREST

A nonconsensual entry into a home in order to make a routine felony arrest is a violation of the Fourth Amendment if the arresting officer lacks a valid warrant. *Payton v. New York,* 445 U.S. at 576. The trial court reasoned that, by giving consent to such an entry, an occupant waives his Fourth Amendment right to privacy. On the theory that "waivers" of constitutional rights are valid only if given knowingly and intelligently, it concluded that the consent in the present case was not valid because the defendants did not know their visitors were policemen intent on making an arrest. In any event, the trial judge characterized the *Payton* protection as an absolute right to privacy when the arresting officer is without a valid warrant, and that even a consensual entry would not validate his actions. We again disagree.

The *Payton* Court explicitly reserved judgment as to whether its ruling would apply where entry is made with the consent of any occupant. *Payton v. New York,* 445 U.S. at 582–83. Accordingly, we turn to other decisions that have addressed the requirements of a voluntary consent in the area of searches and seizures.

Proof of a knowing and intelligent waiver is not required in every situation in which a person has failed to invoke a constitutional protection. *Schneckloth v. Bustamonte,* 412 U.S. 218, 235, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973).

Almost without exception, the requirement of a knowing and intelligent waiver has been applied only to those

rights which the Constitution guarantees to a criminal defendant in order to preserve a fair trial.

(Footnote omitted.) *Schneckloth v. Bustamonte,* 412 U.S. at 237.

There is a vast difference between those rights that protect a fair criminal trial and the rights guaranteed under the Fourth Amendment. Nothing, either in the purposes behind requiring a "knowing" and "intelligent" waiver of trial rights, or in the practical application of such a requirement suggests that it ought to be extended to the constitutional guarantee against unreasonable searches and seizures.

*Schneckloth v. Bustamonte,* 412 U.S. at 241. The voluntariness of a consent to a search is a simple question of fact, to be determined from the totality of the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. at 227; *State v. Shoemaker,* 85 Wn.2d 207, 211–12, 533 P.2d 123 (1975). "Consent to search is not subject to the limitations and restrictions applicable to 'waiver' of other constitutional guaranties." *State v. Shoemaker,* 85 Wn.2d at 213 (Utter, J., dissenting); *see also State v. Rodriguez,* 20 Wn. App. 876, 582 P.2d 904 (1978); 2 W. LaFave, *Search and Seizure* § 8.1(a) (1978 & Supp. 1985). In our judgment, no higher standard applies to a consent or invitation to cross the threshold of a private residence. Here, the trial court found that the officers entered the Williamson residence only after being expressly invited to do so by an occupant. This resolved the factual issue of consent. The court need not have gone further.

We reverse the order suppressing evidence and remand for further proceedings consistent with this opinion.

PETRICH and ALEXANDER, JJ., concur.

Reconsideration denied December 24, 1985.

Review denied by Supreme Court February 21, 1986.