[No. 26524-5-I.   Division One.   May 26, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. JAYSEN O.K. RYLAND, *Appellant.*

*Parris K. Kallas* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Raymon Thomas, Deputy,* for respondent.

WEBSTER, A.C.J. — Jaysen Ryland appeals his conviction of second degree burglary. He claims that the trial court erred by failing to suppress his "confession" since a house guest (who admitted a plainclothes police officer into Ryland's home for the purpose of making a warrantless

arrest) lacked authority to validly consent to the officer's entry. We agree.

## FACTS

On July 26, 1989, a burglary was committed at Highline High School. One of the suspects arrested at the scene alleged that Ryland had been involved. The following morning, on July 27, 1989, a plainclothes police officer went to Ryland's apartment and knocked on the door. A houseguest, who was a friend of Ryland's roommate and had spent the night on the living room couch, answered the door. The officer asked to see Ryland and was allowed entry. According to the officer, Ryland then came out of a back room; the officer identified himself, arrested Ryland for investigation of burglary, and escorted him to the precinct for questioning. Upon questioning, Ryland initially denied knowing of the burglary and "then admitted his involvement".

On August 23, 1989, Ryland was charged with second degree burglary. Prior to trial, he moved to suppress his postarrest statements on the grounds his arrest was unlawful, since the officer's entry into his home for the purpose of arrest, absent a showing of valid consent, violated the Fourth Amendment. The trial court denied the motion, and Ryland was subsequently convicted by a jury of second degree burglary.

## DISCUSSION

█ It is undisputed that the arresting officer entered Ryland's residence without a warrant with the intent to arrest Ryland.[1] Absent valid consent, this practice has been condemned by both the United States and Washington Supreme Courts. *Payton v. New York*, 445 U.S. 573, 590, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980) (the Fourth Amendment has drawn a firm line at the entrance to the house.

---

[1]Ryland claims the consent was invalidated because the detective was not in uniform. However, a plainclothes police officer is not required to notify the consenting person of an intent to make a warrantless arrest before gaining entry. *State v. Williamson*, 42 Wn. App. 208, 211, 710 P.2d 205 (1985), *review denied*, 105 Wn.2d 1012 (1986).

Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant); *State v. Hoffman*, 116 Wn.2d 51, 804 P.2d 577 (1991); *State v. Griffith*, 61 Wn. App. 35, 808 P.2d 1171, *review denied*, 117 Wn.2d 1009 (1991). However, a warrantless arrest based on a consensual entry is permitted under *Payton* and the relevant Washington authorities. *State v. Williamson*, 42 Wn. App. 208, 213, 710 P.2d 205 (1985) (consent may be validly granted by a third party occupant), *review denied*, 105 Wn.2d 1012 (1986).

The issue in this case is whether the "houseguest" had the requisite authority to consent to the officer's entry.[2] We find that he did not and, therefore, the trial court erred by failing to suppress the fruits of the evidence seized by the warrantless arrest (*i.e.*, the confession). The State urges this court to adopt the "apparent authority" doctrine enunciated in the United States Supreme Court case of *Illinois v. Rodriguez*, 497 U.S. 177, 186-87, 111 L. Ed. 2d 148, 160, 110 S. Ct. 2793 (1990). In *Rodriguez*, the police were summoned to a residence where the owner's daughter showed severe signs of beating. She stated that she had been assaulted by Rodriguez in "an" apartment and that Rodriguez was now at the apartment asleep. She then consented to going to the apartment with the officers to unlock the door with *her key* so that the officers could arrest Rodriguez. During this time, the victim referred to the apartment as "our" apartment and said that she had clothes and furniture there. It was unclear whether she indicated that she currently lived at the apartment or only that she had lived there in the past. The facts showed that she had moved out a month prior to the arrest but had left some of her furniture and clothes. The Court went on to hold that even if the person allowing entry did not have authority to consent, the entry may be

---

[2]Although the *Williamson* court found valid consent to police entry, the court was not required to address the issue of whether a "houseguest" can consent to a warrantless entry. The court presumed the person granting entry "shared the home" with Williamson since the two defendants (one being the person granting entry, the other being Williamson), in their suppression hearing brief, repeatedly used the term " 'defendants' residence.' " *Williamson*, at 210 n.1.

validated if the officers "reasonably believe" that the person does have authority:

> As with other factual determinations bearing upon search and seizure, determination of consent to enter must "be judged against an objective standard: would the facts available to the officer at the moment . . . 'warrant a man of reasonable caution in the belief' " that the consenting party had authority over the premises? *Terry v. Ohio*, 392 U.S. 1, 21-22[, 20 L. Ed. 2d 889, 88 S. Ct. 1868] (1968). If not, then warrantless entry without further inquiry is unlawful unless authority actually exists. But if so, the search is valid.

*Rodriguez*, 497 U.S. at 188-89. The Court then remanded the case to determine whether the officers reasonably believed that the person had the authority to consent.

■ We find that *Rodriguez* is distinguishable on its facts. In *Rodriguez*, the third party granting consent not only had a house key, but referred to Rodriguez's apartment as "ours" and had furniture and clothes in the apartment. This was enough for the Supreme Court to find that a factual issue was raised as to whether the officers "reasonably believed" that she had authority to consent. No such facts exist in this case. Here, the arresting officer encountered a man at the door who allowed the officer to enter when he asked to see Ryland. Even though the entry was early in the morning and the unidentified guest who answered the door appeared to have been sleeping on the couch, we believe that these facts would not "warrant a man of reasonable caution in the belief . . . that the consenting party had authority over the premises" and, therefore, they do not meet the threshold which the Court in *Rodriguez* held allowed for remand. There are no facts similar to those found in *Rodriguez* which would indicate that the police could have reasonably determined that the "houseguest" had common authority over the premises.[3]

Since there was no reason justifying the officer's failure to secure an arrest warrant, the confession, obtained as the

---

[3]We do not decide whether, if *Rodriguez* were applicable, an analysis of our state constitutional protections would nevertheless lead to a contrary result.

result of an improper warrantless arrest, should have been suppressed.[4]

The judgment is reversed.

BAKER, J., concurs.

AGID, J. (dissenting) — I dissent from the court's disposition of this case. In my view, it should be remanded to the trial court for a hearing to determine whether the officer reasonably believed that the house guest had authority to consent to entry. All this court knows about the circumstances of the entry is that the arrest occurred very early in the morning and that the person who consented to entry was asleep at the time the officer knocked on the door looking for Ryland. Both of these circumstances are consistent with his being an occupant of the house and, under *State v. Williamson*, 42 Wn. App. 208, 710 P.2d 205 (1985), a person who can consent to the officer's entry. However, at the suppression hearing in this case, neither the trial court nor the parties considered whether the house guest had apparent authority to consent to the officer's entry.

In addition, the United States Supreme Court announced its decision in *Illinois v. Rodriguez*, 497 U.S. 177, 111 L. Ed. 2d 148, 110 S. Ct. 2793 (1990), several months after the hearing below. In *Rodriguez*, the Supreme Court held that the trial court should determine whether " '. . . the facts available to the officer at the moment [of entry] . . . "warrant a man of reasonable caution in the belief" ' that the consenting party had authority over the premises". 497 U.S. at 188 (quoting *Terry v. Ohio*, 392 U.S. 1, 21-22, 20 L. Ed.

---

[4]The State argues that even if this court determines the trial court erred, any error was harmless, thereby precluding the remedy of reversal. *State v. Guloy*, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985), *cert. denied*, 475 U.S. 1020 (1986) ("[a] constitutional error is harmless if the appellate court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error"); *see also State v. Ng*, 110 Wn.2d 32, 38, 750 P.2d 632 (1988). We have reviewed the record and find that the error was not harmless.

2d 889, 88 S. Ct. 1868 (1968)). Because the *Rodriguez* Court could not ascertain from the record what the trial court's evaluation of this question would be, it remanded for a hearing to make this determination. This court should do the same thing here. We simply do not have a record on which to rule out application of the apparent authority doctrine adopted in *Rodriguez*. It is imprudent to reverse a conviction under these circumstances.

Review granted and remanded at 120 Wn.2d 325 (1992).